## Winchester *versus* Bennett and Davis.

1. If a point of law be reserved it must be done by stating on the record the facts on which it arises, without which judgment cannot be entered, *non obstante veredicto*.

2. In order to enter such judgment, the judge below cannot himself draw conclusions of fact from the evidence; these are to be determined by a jury or agreement of the parties.

March 12th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ. READ, J., sick.

Error to the Court of Common Pleas of *Luzerne county*.

[Winchester *v.* Bennett.]

This was an action of trespass, commenced August 18th 1860, by S. S. Winchester against Charles Bennett and A. J. Davis, for taking and carrying away a quantity of coal claimed by the plaintiff.

In 1851 Thomas Fender and others, partners as Patten & Fender, were owners of a coal-mine in Luzerne county: in 1857 Fender had become surviving partner. Bennett and Davis, the defendants, were owners of contiguous mines. There was a lateral railroad from these mines to the Susquehanna river, upon which Patten & Fender and Bennett & Davis had run their coal from the year 1851. Each mine had a place for stocking coal, about 300 yards from the respective shafts. There was evidence that during the years 1858–59 one Mitchell, who was mining for Fender, worked over into Bennett & Davis's land, and took from it for Fender about 1000 tons of coal; that Bennett & Davis having brought suit for this trespass, it was agreed that Mitchell should mine for them as much coal from Fender's land as he had taken from theirs, they to pay for mining.

The following paper was given in evidence as part of the proof of this agreement:

" Mr. John Mitchell,—Dear sir: When you and Charles Bennett can arrange about the amount of coal taken from his land, and the price to be paid for the mining and delivering of the same, I hereby agree that you shall deliver the same to him.
      " I am yours,                 THOMAS FENDER.
            " Plymouth, October 11th 1859."

There was evidence also that the real estate of Fender was sold by the sheriff under a writ to January Term 1860, but the sale was set aside January 23d 1860 ; that Mitchell in that month mined about 1000 tons of coal from Fender's land under the agreement, using the same cars and machinery which he had before used when mining for Fender, and placed it on the stocking-ground theretofore used by Fender; that Bennett & Davis paid Mitchell for mining this coal.

Fender's real estate was sold by the sheriff on the 25th of February 1860, and deed acknowledged 27th of same month.

A number of executions were issued against the firm of Patten & Fender to May Term 1860, and this coal—being then where it had been placed by Mitchell on the stocking-ground of Fender, —was sold to Winchester, the plaintiff, for $8.

There was evidence at the trial that Bennett & Davis were absent from the county, and it did not appear that they had notice of the sale, or that any notice of their claim was given at the sale.

Bennett & Davis afterwards took the coal away, for which this

[Winchester *v.* Bennett.]

action was brought.   On the trial no question was formally reserved.

There was a verdict for the plaintiff for $858.

The court (Conyngham, P. J.) afterwards directed judgment for the defendant, notwithstanding the verdict, saying in the opinion : " The verdict was taken in this case in order to ascertain the value of the coal for which the suit was brought, subject to the opinion of the court upon the reserved point.

" The court charged the jury, that if the coal was liable to levy and sale as the property of Fender or Patten & Co. under the executions in evidence, the sale should be considered valid, and would vest the ownership in the plaintiff.   It is true that he bid off the whole quantity, about 1000 tons, for the mere nominal price of $8, yet at the time of the sale there were several present, a sufficient number to make the sale good, and though the price was very small, that would not defeat the sale.   The fact that Bennett & Davis did not show that they gave notice of their claim at the day of sale, would not estop them now, if the coal truly belonged to them, as the testimony was, that both Bennett and Davis were absent from the county at the time, and it did not appear that they knew of the proceedings.

" It was not contended upon the part of the plaintiff that there was any question of actual fraud between Fender and Bennett in the transfer of the coal, but he claimed that the neglect and want of a sufficient change of possession was evidence of fraud."

The judge, after stating what in his judgment " substantially the facts in evidence were," further said :—

" The plaintiff contended that this was a sale of personal property, and that the evidence showed no such change of possession attendant upon the sale as would justify the purchaser in claiming adversely to execution-creditors, and that under the undisputed evidence, it presented a case of fraud in law.   This point the court reserved, ruling it *pro formâ* with the plaintiff, subject to the agreement of the parties to enter judgment for the defendant *non obstante veredicto*, if the view of the court upon the law, upon argument thereafter, should be different."

The plaintiff assigned for error the entering judgment for the defendants.

*L. Hakes,* for plaintiff in error.

*S. Woodward* and *G. M. Harding,* for defendants in error.— Morgan *v.* Biddle, 1 Yeates 3 ; Luchenbach *v.* Brickenstein, 5 W. & S. 149 ; Haynes *v.* Hunsicker, 2 Casey 60.

The opinion of the court was delivered, March 18th 1867, by STRONG, J.—There is real difficulty in this case arising from

the fact that the record does not show precisely what legal question was reserved. In seeking for it the only guide we have is the opinion of the court given when judgment was entered for the defendants *non obstante veredicto*, and all that we find there is a statement of the facts in evidence, not as found by the jury, and not as agreed to by the parties, but as the judge thought they substantially were. After thus reciting the case as he understood it, he added " the plaintiff contended that it was a sale of personal property, and that the evidence showed no such change of possession as would justify the purchaser in claiming adversely to execution-creditors, and that under the undisputed evidence it presented a case of fraud in law." He then proceeded to state that the court reserved that point, ruling it *pro formâ* with the plaintiff, subject to the agreement of the parties to enter judgment for the defendant *non obstante veredicto*, if the view of the court upon the law upon argument thereafter should be different." All this may have been understood at the trial, but it shows nothing definite to us. As ought to have been expected, the argument before us has been a controversy in regard to the facts, and we have been asked to look at the evidence, rather than at any state of facts established by verdict or by agreement. If the transaction between Fender and Mitchell and Bennett was as the court inferred it to have been, a license to Bennett to take coal from Fender's land, the judge was undoubtedly right in the principles of law which he applied. But how could he know that such was the character of the arrangement? Certainly in no way, except by his drawing conclusions of fact from the evidence. Nothing on the record shows it; even the evidence, as we have it, is not certified. And if it be taken as stated in the paper-books, it is by no means certain that under the arrangement, Bennett became the owner of the coal mined before it was taken out of the shaft and delivered at the stocking-ground. Taking the order of Fender to Mitchell in connection with Mitchell's testimony, it was not to be pronounced as a conclusion of law, that title to the coal passed to Bennett before its delivery at the place appointed. It may have been thus, but nothing less than a verdict or an agreement of parties can determine it. The law in regard to the reservation of questions is clearly set forth in three cases reported in 35 Penna. State R.: Clark and Shaw v. Wilder, p. 314; Irwin v. Wickersham, p. 316; and Wilson v. The Steamboat Tuscarora, p. 317. Under the Act of Assembly of March 5th 1835, Pamph. L. 90, and the Act of 22d of April 1863, Pamph. L. 554, it is only questions of law that can be reserved. In Irwin v. Wickersham, it was ruled that if a point of law is to be reserved, it must be done by stating on the record the facts on which it arises, and that without such a statement on the record a court is not authorized to enter judgment *non obstante*

4 P. F. SMITH—33

*veredicto.* The judgment in this case was therefore erroneous, and the case must go back to have the facts found and the law applied to them when found.

It may be that this will not benefit the plaintiff in error. If the jury shall find that Bennett, by himself or an agent, took the coal out of Fender's land, under a license so to take it, of course the plaintiff cannot recover. And if, on the other hand, the first delivery of the coal was agreed to be made on Fender's stocking-ground, and the owner's right did not pass until such delivery, it does not necessarily follow that the coal was liable to seizures at the suit of Fender's creditors. In regard to this, however, we now express no opinion. For the present we decide no more than that no question was properly reserved.

Judgment reversed, and a *venire de novo* awarded.